**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Springfield Division)**

| | | |
|---|---|---|
| **IRWIN INDUSTRIAL TOOL COMPANY** | ) | |
| **D/B/A LENOX,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:15-cv-30005** |
| **v.** | ) | |
| | ) | |
| **MILWAUKEE ELECTRIC TOOL** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
|    **Defendant.** | ) | |

**PLAINTIFF'S NONCONFIDENTIAL MEMORANDUM IN OPPOSITION TO**
**DEFENDANT MILWAUKEE ELECTRIC TOOL CORPORATION'S MOTION TO**
**STAY PENDING *INTER PARTES* REVIEW**

## **TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………………………………….. 1

II.  BACKGROUND……………………………………………………………… 1

III. ARGUMENT AND CITATION TO AUTHORITIES……………………….. 5

    A. Lenox Will Suffer Undue Prejudice And A Tactical Disadvantage Should
       This Case Be Stayed……………………………………………………… 6

      i.  The Parties Are Direct Competitors And Prejudice Is Presumed………………. 7

      ii.  A Stay Would Place Lenox At A Tactical Disadvantage And Reward
         Milwaukee's Dilatory Conduct……………………………………….........11

    B. A Simplification Of The Issues Only Slightly Favors A Stay……………………… 13

    C. The Stage of the Litigation Favors Denial Of The Motion To Stay…………………14

    D. A Balancing Of All Three Factors Indicates A Stay Is Inappropriate………………15

IV. CONCLUSION…………………………………………………………………..16

**TABLE OF AUTHORITIES**

CASES                                                                           PAGE(S)

*ACQIS, LLC v. EMC Corp.,*
    No. 14-CV-13560-ADB, 2015 WL 3617106, at *2 (D. Mass. June 10, 2015)………...passim

*ADA Sols., Inc. v. Engineered Plastics, Inc.,*
    826 F. Supp.2d 348, 350 (D. Mass. 2011)……………………………………………....passim

*Air Vent, Inc. v. Owens Corning Corp.,*
    No. 02:10-CV-01699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012)…………………...8

*Boston Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.,*
    No. 13-13111-FDS, 2014 WL 2048436, at *1 (D. Mass. May 16, 2014)……………...6, 7, 13

*Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.,*
    No. 13-CV-15293, 2015 WL 1510671, at *3 (E.D. Mich. Apr. 1, 2015)………………...…9

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.,*
    No. 2:15-cv-21, 2015 WL 7272199, at *3 (E.D. Va. Nov. 16, 2015)…………..………....9

*Cooper Notification v. Twitter, Inc.,*
    No. 09-865-LPS, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010)………………………..15

*Cooper Techs. Co. v. Thomas & Betts Corp.,*
    2:06-CV-242, 2008 WL 906315, at *1 (E.D. Tex. Mar. 31, 2008)…………………………..7

*Davol, Inc. v. Atrium Med. Corp.,*
    No. 12-958-GMS, 2013 WL 3013343, at *6 (D. Del. June 17, 2013)……………...…...6, 10

*FMC Corp. vs. Summit Agro USA, LLC,*
    No. CV 14-51-LPS, 2014 WL 3703629, at *5 (D. Del. July 21, 2014)……...….….…7, 10, 11

*Heraeus Electro–Nite Co., LLC v. Vesuvius USA Corp.,*
    No. 09-2417, 2010 WL 181375, at *1 (E.D. Pa. Jan. 11, 2010)……………………….……7

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.,*
    No. 12-054-GMS-MPT, 2013 WL 663535, at * 7 (D. Del. Feb. 25, 2013)…………….…....14

*Interwoven, Inc. v. Vertical Computer Sys., Inc.,*
    No. C 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012)…………….…...…14

*Malibu Boats, LLC vs. Nautique Boat Co.,*
    No. 3:13-CV-656-TAV-HBG, 2015 WL 4747878, at *3 (E.D. Tenn. Jan. 28, 2015)…..…...10

*Momenta Pharmaceuticals, Inc. v. Amphastar Pharmaceuticals, Inc.*,
 882 F.Supp.2d 184, 197 (D. Mass. 2011) vacated and remanded on other grounds,
 686 F.3d 1348 (Fed. Cir. 2012)…………………………………….……………...………11

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
 No. 12-662-GMS, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013)……………..…..………10

*Nippon Steel & Sumito Metal Corp. v. POSCO*,
 No. CIV.A. 12-2429 DMC, 2013 WL 1867042, at *5, n.7 (D.N.J. May 2, 2013)…….....…..5, 7

*SenoRx v. Hologic*,
 No. 12–173, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013)………………...…..…..…..10, 16

*Softview LLC v. Apple, Inc.*,
 No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012)………….…...…………15

*Steuben Foods, Inc. vs. GEA Process Eng'g., Inc.*,
 No. 12-CV-0904S SR, 2013 WL 5567499, at *4 (W.D.N.Y. Oct. 8, 2013)………..…..……..7

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*,
 No. 3:09cv791, 2010 WL 1946262, at * 4 (E.D. Va. May 10, 2010)……………….…..8, 13

*Surfcast, Inc. v. Microsoft Corp.*,
 No. 2:12-CV-333-JDL, 2014 WL 6388489, at *2 (D. Maine Nov. 14, 2014)…………..…..14

*Tesco Corp. v. Weatherford Int'l, Inc.*,
 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009)………………………...…………………………7

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
 943 F.Supp.2d 1028, 1035 (C.D. Cal. 2013)……………………………………………….5

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
 No. C 12-05501 SI, 2014 WL 121640, at *4 (N.D. Cal. Jan. 13, 2014)………………………6

## I.   INTRODUCTION

Defendant Milwaukee Electric Tool Corporation's ("Milwaukee") motion to stay should be denied for multiple reasons, the most important of which is the undue prejudice and tactical disadvantage to Plaintiff Irwin Industrial Tool Company d/b/a Lenox ("Lenox") that would result from the stay.[1]  Should this Court grant a stay, Milwaukee would accrue a windfall of at least 18 more months of unimpeded time to continue to benefit from its infringing activities in direct competition with Lenox, causing undue prejudice to Lenox. Further, Milwaukee's Petition for *Inter Partes* Review ("IPR") was not granted on two of the claims in U.S. Patent No. 8,579,555 (the "'855 Patent"), and therefore, unless the U.S. Patent Trial and Appeal Board ("PTAB") changes course on these two claims, the issue of infringement and validity of these two claims of the '855 Patent will require resolution by this Court, however the PTAB resolves the IPR. For these and other reasons discussed herein, Milwaukee's attempt to stay this case should be denied.

## II.   BACKGROUND

Lenox has been operating as a business for nearly a century. During this time period, Lenox, now a wholly-owned subsidiary of Newell Rubbermaid, Inc., has invested significant resources developing and providing its customers premium-performance tools and accessories. In its 500,000 square-foot facility sitting on an 11-acre space in East Longmeadow, Massachusetts, Lenox integrates research and development with advanced manufacturing techniques to market and provide customers band saw blades, hand tools, and power tool accessories, including but not limited to, wood and metal cutting Bi-Metal hole saws and hole saw kits. *See* Complaint, Dkt. No. 001, ¶ 3.

On January 13, 2010, Lenox filed a nonprovisional utility patent application titled "Hole

---

[1] Lenox is concurrently filing an unopposed motion for leave to file a confidential version referring to documents recently produced by Milwaukee and designated "Highly Confidential – Outside Attorneys Eyes Only."

Cutter With Axially-Elongated Aperture Defining Multiple Fulcrums," which application resulted in the issuance of United States Patent No. 8,579,554, on November 12, 2013 ("the '554 Patent"). On January 13, 2011, Lenox filed a further nonprovisional utility patent application titled "Hole Cutter With Axially-Elongated Aperture Defining Multiple Fulcrums," which application resulted in the issuance of United States Patent No. 8,579,555, on November 12, 2013 ("the '555 Patent").

The inventions in the '554 and '555 Patents are embodied in a line of Lenox Speed Slot® hole saws.  Lenox introduced the Speed Slot® line in 2011, and it was the first hole saw on the market to provide a "staircase" slot for significantly easier removal of work piece slugs that get stuck in the interior of the hole saw once a hole is cut.  *See* Exhibit A, Declaration of Matthew T. Savarino, ¶ 3; *see also* below and Exhibit B (showing a Lenox Speed Slot® hole saw, a Milwaukee Hole Dozer™ hole saw, and other hole saws on the market as identified in Milwaukee's Motion to Stay[2]).  The "staircase" slot marked a significant advancement over hole saws already on the market.



---

[2] Images taken from Dewalt (http://www.dewalt.com/toolparts/drilling-accessories-bi-metal-hole-saws-hole-saws.aspx); Bosch (http://www.boschtools.com/Products/Accessories/Pages/BoschAccessoryDetail.aspx?pid=HB387#specs); MK Morse (http://www.mkmorse.com/products/index.aspx?product=91); and Starrett (http://www.starrett.com/metrology/product-detail/240101-Bi-Metal/2401-Hole-Saws/24-PTA-and-Hand-Saw-Blades/2-Saws/AVH0134).  Lenox was unable to access the website of the Bahco product at http://extranet.snaeurope.com/ProduBlock.aspx?sectionID=50491 as this link directed Lenox back to a page that required login credentials.

Lenox has invested significant resources into the Speed Slot® line of hole saws. In addition to substantial R&D costs that are not readily quantifiable at this point, several years after the expenditure, Lenox incurred more than $3.5 million in capital costs to develop new manufacturing equipment for the new Speed Slot® hole saw product line. *See* Exhibit A at ¶ 8. Adding the market research Lenox conducted pre-launch and advertising campaigns that have been run in three of the past five years (but excluding substantial costs that are as of yet unquantifiable), Lenox's investment in the Speed Slot® line of hole saws has easily exceeded $7 million. *Id*.

As part of its marketing efforts, Lenox educated its customers and prospects about the benefits and advantages of these improved hole saws. *Id*. at ¶ 9. Before Lenox's innovation entered the marketplace, end users had adapted to the idea that nothing could be done to improve plug removal in a hole saw. *Id*. This was evident when Lenox's personnel would ask them 'what is important when using a hole saw?' – and life, durability and speed of cut always topped the list of desired features. *Id*. After Lenox introduced Speed Slot® and went out to ask users the same question, easy plug removal started being listed as an important feature for a hole saw to have, along with life, durability and speed.

The innovation of the staircase slot, combined with Lenox's longstanding reputation for generally having higher quality, fast cutting, and durable saws, has enabled Lenox to command a premium price for this product line. The sales of the Lenox Speed Slot® hole saw product line have exceeded Lenox's initial forecasts, resulting in sales associated with the Lenox Speed Slot® line that have exceeded twenty million dollars a year. *Id.* at ¶ 10.

Lenox and Milwaukee are the two largest competitors in the hole saw market by market share. *Id*. at ¶ 7. By Lenox's internal estimate, done for business purposes, Lenox has 31% of

the market and Milwaukee has 29% of the market.  *Id*.  The next largest competitor has, by

Lenox's estimate, only 11% of the market.  *Id*. Sometime around November of 2014, Milwaukee

introduced a line of Hole Dozer<sup>TM</sup> Bi-metal hole saws that copied Lenox's staircase slot. *Id* at ¶

4.  As evidenced by two YouTube videos, Milwaukee promoted its Hole Dozer<sup>TM</sup> line as

competing directly with Lenox's Speed Slot® line of hole saws, running head-to-head

comparisons of a Lenox Speed Slot® hole saw with a Milwaukee Hole Dozer<sup>TM</sup> hole saw. *Id*. at

¶ 5 (providing one video link https://www.youtube.com/watch?v=iZ0iUdCyC8I). At least one

YouTube video discusses that the Hole Dozer<sup>TM</sup>'s staircase slot makes removal of work piece

slugs significantly easier. *Id.* Today, to Lenox's knowledge, Lenox and Milwaukee are the only

two manufacturers of hole saws with continuous staircase slots sold in the U.S. *Id*. at ¶ 6.

Because of the competition from Milwaukee in selling its copycat Hole Dozer<sup>TM</sup> product

line, Lenox is now having to re-evaluate its premium positioning in the marketplace to remain

competitive with its customer base.  *Id*. at ¶11.

Lenox responded promptly to Milwaukee's infringement and, on January 8, 2015, Lenox

filed this lawsuit detailing Milwaukee's infringement of the '554 and'555 Patents through

Milwaukee's sale, manufacture, use, and/or importation of multiple Hole Dozer<sup>TM</sup> Bi-metal hole

saws.  Milwaukee later filed petitions for *inter partes* review ("IPR") of the '554 and '555

Patents by the U.S. Patent and Trademark Office ("USPTO").  On November 30, 2015, the

USPTO issued decisions instituting IPRs relating to both the '554 and '555 Patents, but denying

institution on claims 27 and 28 of the '555 Patent.

On December 9, 2015, Milwaukee filed a request for rehearing with the USPTO, arguing

that the Patent Trial and Appeal Board ("PTAB") made a mistake in its institution decision on

the '555 Patent.  Rehearing procedures could extend PTAB's decision regarding institution on

claims 27 and 28 of the '555 Patent until at least March 9, 2016.  Although the '555 Patent IPR will proceed during this process, it is possible that the uncertainty regarding claims 27 and 28 will result in a six month extension of time and extend any final decision in the '555 Patent IPR until May 30, 2017. Once decisions are handed down in the IPRs, Milwaukee may file appeals to the Federal Circuit.  These appeals could extend any final disposition of the IPRs for both the '554 and '555 Patents well into late 2018 or 2019.  Meanwhile, Milwaukee's infringement will continue unabated.

## III.    ARGUMENT AND CITATION TO AUTHORITIES

A district court has an inherent power to manage its docket, and therefore, it is "not required to grant a stay in a patent case pending re-examination of a patent by the PTO." *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp.2d 348, 350 (D. Mass. 2011).  Indeed, Congress specifically declined to provide for an automatic stay of pending litigation upon the commencement of reexamination/review proceedings in order to allow the courts to account for the individual circumstances of each case.  *See Nippon Steel & Sumito Metal Corp. v. POSCO*, No. CIV.A. 12-2429 DMC, 2013 WL 1867042 at *5, n.7 (D.N.J. May 2, 2013). "The Court's ability to control its docket [ensures] that cases are managed in the interest of justice" and that federal court calendars are not hijacked by reexamination proceedings. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1035 (C.D. Cal. 2013). "If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts." *Id*.

"In determining whether a stay is appropriate, courts must consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the issues in question and trial of the case; and

(3) the stage of the litigation." *Boston Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.*, No. 13-13111-FDS, 2014 WL 2048436, at *1 (D. Mass. May 16, 2014).  Courts are to analyze these factors together and consider the totality of the circumstances in each case. *ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560-ADB, 2015 WL 3617106, at *2 (D. Mass. June 10, 2015). Further, "while prior decisions may prove instructive, the inquiry [into the appropriateness of a stay] is largely case specific." *Id.*  An analysis of these three factors indicates that this court should deny Defendant Milwaukee's motion to stay because the factor of prejudice to Lenox strongly favors denial of the stay and is accorded greater weight, factor two only slightly disfavors denial of the stay, and factor three favors denial of the stay.

   A. <u>Lenox Will Suffer Undue Prejudice And A Tactical Disadvantage Should This Case Be Stayed</u>

This Court has indicated that the first factor, prejudice or tactical disadvantage to the non-moving party, is the most important of the three factors for determining whether a stay is appropriate. *ADA Sols.*, 826 F. Supp.2d at 350  ("The first and arguably most important factor is whether and to what extent a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."); *see also Davol, Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *6 (D. Del. June 17, 2013) (denying a motion to stay and finding that undue prejudice to the non-moving party outweighed the other two factors that favored a stay); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *4 (N.D. Cal. Jan. 13, 2014) (denying a motion to stay and finding that undue prejudice to the non-moving party outweighs simplification of issues).  Defendant Milwaukee bears the burden on this factor and must show that Lenox would not be unduly prejudiced or placed at a tactical disadvantage. *ADA Sols.*, 826 F. Supp.2d at 350 ("The moving party bears the burden of showing that the non-moving party will not be prejudiced by a stay."). Not only has Milwaukee not met its burden on factor one,

the evidence shows that Lenox would be substantially prejudiced by a stay, and this factor strongly favors denial of the stay.

> i.   The Parties Are Direct Competitors And Prejudice Is Presumed

This Court has repeatedly found that there is a presumption of prejudice to the non-moving party when the parties are direct competitors. *Id.* ("[P]rejudice is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant."); *Boston Heart,* 2014 WL 2048436, at *2 ("[P]laintiff would suffer some harm because of defendant's direct competition, which weighs in favor of denying a stay."). This presumption of prejudice comports with the findings of other courts. *See, e.g., FMC Corp. vs. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014 WL 3703629, at *5 (D. Del. July 21, 2014) ("It is well established that [c]ourts are generally reluctant to stay proceedings where the parties are direct competitors.") (internal citations omitted); *Nippon Steel*, 2013 WL 1867042, at *5 ("But when parties are directly competing and the landscape of the relevant market is changing, it presents a circumstance where justice demands that the allegedly aggrieved party be given an opportunity to litigate its claims—and sooner rather than later."); *Steuben Foods, Inc. vs. GEA Process Eng'g., Inc.*, No. 12-CV-0904S SR, 2013 WL 5567499, at *4 (W.D.N.Y. Oct. 8, 2013) (finding undue prejudice when parties were direct competitors); *Heraeus Electro–Nite Co., LLC v. Vesuvius USA Corp.,* No. 09-2417, 2010 WL 181375, *1 (E.D. Pa. Jan. 11, 2010) ("[C]ourts have been reluctant to grant stays where, as here, the parties are direct competitors" given the "concern that the patent owner will be irreparably harmed because the accused product will continue to gain market share during the pendency of the stay"); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are direct competitors, a stay would likely prejudice the non-movant."); *Cooper Techs. Co. v. Thomas & Betts Corp.*, 2:06-CV-242, 2008 WL 906315, at *1

(E.D. Tex. Mar. 31, 2008) (finding that because the parties were direct competitors prejudice was likely and weighed against the stay); *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc*., No. 3:09cv791, 2010 WL 1946262,  at *4 (E.D. Va. May 10, 2010) (finding that the plaintiff would be prejudiced by a stay because the parties were direct competitors).  Milwaukee admits that "Plaintiff and Defendant directly compete in the hole saw market." (Motion to Stay, Dkt. No. 049 at p. 11)  Hence, there is a presumption that a stay of these proceedings will prejudice Lenox.

Milwaukee tries to blunt the impact of the prejudice by arguing that the parties "are but two of several companies that compete in the hole saw market," citing a case out of the Western District of Pennsylvania that indicates that where there are multiple competitors, there may be no prejudice from a stay. *Id*. (citing *Air Vent, Inc. v. Owens Corning Corp.*, No. 02:10-CV-01699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012).)  However, not only does Lenox disagree with the premise of this Pennsylvania case, it is inapposite because Milwaukee has understated its role as a competitor of Lenox.  Lenox and Milwaukee are the two predominant competitors in the general hole saw market by market share. *See* Exhibit A at ¶ 7.  By Lenox's estimate, prepared for business purposes, Lenox has 31% of the market and Milwaukee has 29% of the market.  *Id*. The next largest competitor has, by Lenox's estimate, only 11% of the market. *Id*.

More importantly, Lenox and Milwaukee stand apart from these "other competitors" by providing a hole saw with a significantly better slot for removing work piece slugs from the interior of the hole saw.  Lenox's patented Bi-Metal hole saw product is a substantial advancement in hole saw technology in that it contains a tiered slot (or aperture) that makes removal of work piece slugs from the interior of the hole saw substantially easier. *Id*. at ¶ 3. [NOTE – CONFIDENTIAL INFORMATION DELETED FROM NON-CONFIDENTIAL VERSION]  *See* Exhibit C. None of the other hole saw competitors mentioned in Milwaukee's Motion to Stay have such an

8

improved slot.  *See* Exhibit A at ¶ 6*; see also* Exhibit B. Of Lenox's "competitors," only Milwaukee sells a product that copies Lenox's patented hole saw technology, and Milwaukee promotes this Hole Dozer™ product line as directly competing with Lenox's Speed Slot® patented line of hole saws, running head-to-head comparisons of a Lenox Speed Slot® hole saw with a Milwaukee Hole Dozer™ hole saw in several of its promotional videos. *See* Exhibit A at ¶ 5. This places only Milwaukee in direct competition with Lenox within the narrow, higher value market for advanced hole saws.  These facts distinguish the case of *Air Vent* cited by Milwaukee where there was no finding that the parties' products stood apart in the market.

Milwaukee's reliance on other non-precedential cases is also misplaced. In *Cequent*, the court noted that "courts 'routinely deny requests for stays where parties are,' as here, 'direct competitors," but granted the stay in that case because the plaintiff delayed filing suit for ten years, indicating that a stay would not unduly prejudice the plaintiff. *Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*, No. 13-CV-15293, 2015 WL 1510671, at *3 (E.D. Mich. Apr. 1, 2015). In stark contrast, Lenox filed suit against Milwaukee within months of Milwaukee's introduction of the infringing product. The court in *Cobalt Boats* did not even consider the competitor status of the parties and propounded a general rule that stays based on IPR proceedings do not cause undue prejudice. *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2015 WL 7272199 at *3 (E.D. Va. Nov. 16, 2015) ("Therefore, if a stay will not diminish monetary damages available to plaintiffs, stays of such claims rarely prejudice plaintiffs. . . Delays based on statutory frameworks, such as those pursuant to IPR proceedings, do not normally cause undue prejudice.")  This Court has not adopted this flawed general rule that IPR proceedings do not cause undue prejudice. Instead, this Court specifically considers undue prejudice to the non-moving party, <u>and</u> presumes that there is prejudice when the parties are direct competitors. *See ADA Sols.,* 826 F. Supp.2d at

350 ("[P]rejudice is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant."). As noted, many other courts follow the same rule. *See, e.g., FMC Corp.*, 2014 WL 3703629 at *5.

Further, when there is a narrower market shared by the parties as there is here, courts recognize that the non-moving party faces a greater risk of surrendering market share to the moving party and that the undue prejudice to the non-moving party strongly favors a denial of the stay. *See, e.g., Davol*, 2013 WL 3013343, at *3 (denying a stay during a pending *inter partes* reexamination when the parties were a part of a relatively exclusive market); *Malibu Boats, LLC vs. Nautique Boat Co.*, No. 3:13-CV-656-TAV-HBG, 2015 WL 4747878 at *3 (E.D. Tenn. Jan. 28, 2015) ("denying defendant's previous request for a stay, the Court highlighted the prejudice that a stay works on direct competitors, especially in a narrow market").

The fact that Lenox has not moved for a preliminary injunction does not reduce the almost certain irreparable and irremediable harm to Lenox, nor does it indicate any acceptance of such harm by Lenox. Certainly, "where the question of 'direct competition' [and likelihood of irreparable harm] remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction." *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013) (citing *SenoRx v. Hologic,* No. 12–173, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013)). Yet, when there is no question that the parties are direct competitors, as is the case here, courts have found prejudice whether or not a preliminary injunction was sought. *See Davol*, 2013 WL 3013343, at *3 (finding that since there was little doubt that the accused products competed directly with the patented products, the court had "little reason to consider whether a preliminary injunction was sought"). Further, Milwaukee's own

dilatory conduct during discovery has impaired Lenox's ability to file a motion for preliminary injunction where the burden of proof is high.

Milwaukee has failed to meet its burden of showing that Lenox would not be unduly prejudiced by Milwaukee's continued sale of infringing products during the stay. To the contrary, there is strong evidence of undue prejudice, because Lenox and Milwaukee are direct competitors – the two principal competitors – in the narrow, higher value market of advanced hole saws.  As noted, Lenox is now being forced to re-evaluate its premium position in the marketplace due to Milwaukee's copying of its continuous staircase slots in order to remain competitive with its customer base. *See* Exhibit A at ¶ 11. Both price erosion and loss of customer goodwill have been recognized by this Court as "kinds of harm that cannot be fully compensated by money damages." *Momenta Pharmaceuticals, Inc. v. Amphastar Pharmaceuticals, Inc.*, 882 F.Supp.2d 184, 197 (D. Mass. 2011) *vacated and remanded on other grounds*, 686 F.3d 1348 (Fed. Cir. 2012). Allowing Milwaukee to continue its unabated copying during a stay would exacerbate these harms and unduly prejudice Lenox. Courts regularly deny stays when just this type of undue prejudice exists due to direct competition between the parties.  *See, e.g.*, *ADA Sols.,* 826 F. Supp.2d at 350; *FMC Corp.*, 2014 WL 3703629 at *5.

ii.  A Stay Would Place Lenox At A Tactical Disadvantage And Reward Milwaukee's Dilatory Conduct

The grant of a stay in these proceedings would also place Lenox at a tactical disadvantage. Pursuant to this Court's Scheduling Order and the impending January 8, 2016 deadline for substantial completion of document production, Lenox has produced over 12,000 pages of documents in response to Milwaukee's discovery requests. In stark contrast, Milwaukee has repeatedly refused to produce documents responsive to Lenox's discovery requests.  Before December 22, 2015, Milwaukee had produced only 600 pages of documents, over 70% of which

were patent file histories that are publicly available on the U.S. Patent and Trademark Office website.[3]  After multiple requests by Lenox, and only recently, Milwaukee made two productions of documents on December 22, 2015 and December 29, 2015.  Yet, Milwaukee still has not produced key documentation, such as documents evidencing Milwaukee's sales, market share, market studies, customers, and territories – information that Lenox specifically requested in order to prepare this Memorandum in Opposition and that Milwaukee said would be produced last week. Also, Milwaukee has refused to cooperate with Lenox in setting dates for two depositions that were previously noticed, and in fact, Milwaukee falsely indicated to this court in its Motion to Stay that "[n]o depositions have been noticed."  (Dkt. No. 049 at 7.)

Milwaukee's strategy appears clear: to avoid its own production of documents and otherwise stonewall discovery while obtaining the benefit of Lenox's production of documents. Certainly, any documents produced by Lenox in this proceeding that relate to the validity of the '554 and '555 patents will benefit Milwaukee in the IPR proceedings. Any tactical advantage obtained by Milwaukee in the IPRs would ultimately lead to a tactical advantage in this proceeding.

Although the undue market prejudice to Lenox cannot be remedied if the stay is granted, if the court does grant a stay it should order that Milwaukee complete its document production, notwithstanding a stay.  That would at least remedy any tactical advantage held by Milwaukee in the legal proceedings and will protect against the delays and inefficiencies that would result from a stay being imposed after the date for substantial completion of document production having passed but before one party has completed its production. Thus, Lenox requests that, however the Court decides the Motion to Stay, it grant Lenox's Motion to Compel Milwaukee's production of documents.  The deadline for both parties to substantially complete document production is only

---

[3] Lenox will shortly be filing a Motion to Compel regarding Milwaukee's conduct in discovery. Additional details regarding Milwaukee's dilatory conduct will be provided in Lenox's Motion to Compel.

four days from now (January 8, 2015), and requiring both parties to complete their document production would be efficient and save resources, as otherwise the parties will be forced to resume a now almost complete document production a year and half later.

### B.  A Simplification Of The Issues Only Slightly Favors A Stay

"A stay is favored where the outcome of the IPR 'would be likely to assist the court in determining patent validity and, if the claims were canceled . . . would eliminate the need to try the infringement issue.'" *ACQIS*, 2015 WL 3617106, at *4.  Since all IPR proceedings would be likely to assist the court in determining patent validity, any simplification of issues causes this factor to only slightly favor the grant of a stay.  *See Boston Heart*, 2014 WL 2048436, at *3 ("Those [simplification] factors are, to be sure, present in all cases. Indeed, '[i]t is little more than a tautology to state that reexamination will simplify the matters at issue.'" (citing *Sunbeam Prods.*, 2010 WL 1946262, at *3)).  This Court found in *Boston Heart* that simplification of the issues only slightly favored a stay when seven claims at issue in the litigation proceeding were not instituted upon in the IPR, and therefore, the IPR would not eliminate the need to try the infringement issue.  *Boston Heart*, 2014 WL 2048436, at *4.  Similar to *Boston Heart*, the PTAB has not instituted review of two of the claims in the '555 patent at issue in this litigation.  Unless PTAB reverses this decision, the IPRs will not eliminate the need for this Court to try the infringement issue.  That exercise would necessitate fact discovery, claim construction, expert discovery, and a trial, with only a slight (if any) reduction of tasks for the Court and parties when compared to the current posture of the case.

This factor only slightly favors a stay.

C.  The Stage of the Litigation Favors Denial Of The Motion To Stay

Although analysis of this factor includes whether discovery is complete and whether a trial date has been set, courts with this same test routinely deny stays and find that this factor disfavors a stay when discovery is not complete and a trial date has not been set.  *See*, *ACQIS*, 2015 WL 3617106, at \*3; *but see Interwoven, Inc. v. Vertical Computer Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at \*4 (N.D. Cal. Mar. 8, 2012) (denying a stay when discovery was "well underway and the parties [were] working on a protective order"); *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2013 WL 663535, at \*7 (D. Del. Feb. 25, 2013) (denying a stay when no trial date had been set and discovery was ongoing). This factor more broadly "requires the court to consider the progress already made in the case." *Surfcast, Inc. v. Microsoft Corp.*, No. 2:12-CV-333-JDL, 2014 WL 6388489, at \*2 (D. Maine Nov. 14, 2014).  Here, Lenox has made significant progress in its responses to Milwaukee's discovery requests and has produced over 12,000 pages of documents.  Lenox is currently working toward and prepared to meet the fast approaching January 8, 2016 deadline for substantial completion of document production, and it has expended significant effort and expense in doing so.  Lenox has also noticed two depositions.

Milwaukee has not made significant progress in this case, but this fact argues *against* Milwaukee in its Motion to Stay. Milwaukee has engaged in deliberate dilatory conduct, having produced, until less than two weeks ago, only 180 pages of documents that are not readily available to the public on the USPTO website. Only after being informed that Lenox intended to file a motion to compel did Milwaukee make two additional productions, and these productions are also deficient.  Milwaukee has yet to produce any documents relating to Milwaukee's sales, market share, market studies, customers, and territories despite Lenox's multiple specific requests for these documents, and despite Milwaukee's promise the documents would be produced last week.

14

Milwaukee has also refused to cooperate with Lenox in setting dates for two depositions that were previously noticed, and stated incorrectly to this Court in its Motion to Stay that "[n]o depositions have been noticed" (Dkt. No. 049 at 7). A stay of these proceedings would only reward Milwaukee's conduct in this regard.

Like Lenox, this Court has already expended ample effort in this case by administering an initial scheduling conference and arranging its schedule to accommodate dates for a claim construction hearing and a case management conference. Courts have denied motions for a stay once the court has expended scheduling efforts. *See*, *e.g.*, *Cooper Notification v. Twitter, Inc*., No. 09-865-LPS, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010) (denying a motion to stay and finding this factor favored denial when discovery had just begun and would not be complete for another eleven months but the court had already expended resources in adopting a schedule); *Softview LLC v. Apple, Inc*., No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (finding that the status of the litigation did not favor a stay, even where the litigation remained at an "early stage" after taking into account resources expended by the parties and the court after entry of a scheduling order). In summary, this case is not in its infancy. Both Lenox and the Court have already expended considerable efforts, and Lenox has incurred considerable expense in meeting its obligations under this Court's Scheduling Order. Factor three therefore slightly favors denial of the stay, or at a minimum, is neutral.

D. A Balancing Of All Three Factors Indicates A Stay Is Inappropriate

Once each factor is separately analyzed, courts are to consider these factors together along with the totality of the circumstances. *ACQIS*, 2015 WL 3617106, at *2. Factor one strongly favors denial of the stay, factor two slightly favors a stay, and factor three slightly favors denial of the stay (or at worst is neutral). As noted, factor one, the undue prejudice or tactical disadvantage to

15

the non-moving party, is the most important of the three factors and should be weighted more heavily. *ADA Sols.*, 826 F. Supp.2d at 350.  Factor one strongly favors denial of the stay because the parties are direct competitors in a high-value market and the undue prejudice to Lenox is not only presumed, it has been established.

Taking these three factors together and weighing factor one most heavily indicates that a denial of Milwaukee's Motion to Stay is most appropriate.  Such a holding would be consistent with a multitude of other cases wherein a stay was denied largely due to the undue prejudice to the non-moving party. *See, e.g*., *ADA Sols.,* 826 F.Supp.2d at 351–52; *SenoRx*, 2013 WL 144255, at *8–9.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Milwaukee's Motion to Stay.


January 4, 2016                         /s/ John W. Harbin
                                        John W. Harbin (*pro hac vice*)
                                        Gregory J. Carlin (*pro hac vice*)
                                        Lisa C. Pavento (*pro hac vice*)
                                        MEUNIER CARLIN & CURFMAN LLC
                                        999 Peachtree Street, NE, Suite 1300
                                        Atlanta, Georgia 30309
                                        Tel:    (404) 645-7700
                                        Fax:    (404 645-7707
                                        jharbin@mcciplaw.com
                                        gcarlin@mcciplaw.com
                                        lpavento@mcciplaw.com

                                        Barry M. Ryan (BBO No. 547336)
                                        DOHERTY, WALLACE, PILLSBURY AND MURPHY, P.C.
                                        One Monarch Place, Suite 1900, 1414 Main Street
                                        Springfield, Massachusetts 01144
                                        Tel:    (413) 733-3111
                                        Fax:    (413) 734-3910
                                        bryan@dwpm.com
                                        *Counsel for Plaintiff Irwin Industrial Tool Company*
                                        *d/b/a Lenox*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT MILWAUKEE ELECTRIC TOOL CORPORATION'S MOTION TO STAY PENDING *INTER PARTES* REVIEW** was served on January 4, 2016 upon counsel for Defendant Milwaukee Electric Tool Company by electronic mail at the addresses listed below:

> Joshua M. Dalton, Esq.
> Peter G. Byrne, Esq.
> Morgan, Lewis & Bockius LLP
> One Federal Street
> Boston, MA 02110-1726
> josh.dalton@morganlewis.com
> peter.byrne@morganlewis.com
>
> Jason C. White, Esq.
> Scott D. Sherwin, Esq.
> Morgan, Lewis & Bockius LLP
> 77 W. Wacker Drive, Ste. 500
> Chicago, IL 60601
> jwhite@morganlewis.com
> ssherwin@morganlewis.com
>
> *Counsel for Defendant Milwaukee*
> *Electric Tool Corporation*

> */s/ John W. Harbin*
> John W. Harbin (*pro hac vice*)