UNITED STATES DISTRICT COURT
DISTRICT FOR MASSACHUSETTS

| | | |
|---|---|---|
| IRWIN INDUSTRIAL TOOL COMPANY d/b/a LENOX, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | No. 3:15-cv-30005-MGM |
| v. | ) | |
| | ) | |
| | ) | |
| MILWAUKEE ELECTRIC TOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO STAY CASE  PENDING *INTER PARTES* REVIEW
(Docket No. 48)

ROBERTSON, U.S.M.J.

    I.    <span style="font-variant:small-caps">Introduction</span>

This case involves a claim of patent infringement by Irwin Industrial Tool Company

d/b/a Lenox ("Lenox" or "Plaintiff") against Milwaukee Electric Tool Corporation

("Milwaukee" or "Defendant").  Plaintiff, the manufacturer of Lenox Speed Slot® hole saws,

alleges that Defendant has infringed U.S. Patent Nos. 8,579,554 (the "'554 Patent") and

8,579,555 (the "'555 Patent") by offering a similar product.  The case is presently before the

court on a motion by Defendant to stay this litigation pending final resolution of an *inter partes*

review proceeding ("*IPR*") being conducted by the United States Patent Trial and Appeal Board

("PTAB") (Dkt. No. 48).  The motion to stay, which was referred to the undersigned for

decision, was heard on February 3, 2016 (Dkt. No. 52).

For the reasons set forth herein, the court grants Defendant's motion and stays this matter through resolution of the pending *IPR* proceeding only.  Absent further order of the court, the stay will not remain in effect during an appeal, if any, from the PTAB's final *IPR* ruling.  The parties shall file a joint status report within ten days after the conclusion of the PTAB review informing the court of the PTAB's decision, and, if applicable, requesting that the court lift the stay.

II.    RELEVANT BACKGROUND

Lenox filed its complaint against Milwaukee on January 8, 2015, claiming infringement of the '554 and '555 Patents by Milwaukee's sale, manufacture, use, and/or importation of Hole Dozer™ Bi-metal hole saws (Dkt. No. 1, ¶¶ 5, 14).  Lenox claimed that Milwaukee's line of Hole Dozer™ Bi-metal hole saws copied the staircase slot of the Lenox Speed Slot® line of hole saws (*id.*).  As evidence of infringement, Plaintiff has pointed to two YouTube videos of the Defendant promoting its Hole Dozer™ line as competing directly with the Plaintiff's Speed Slot® line of hole saws (Dkt. No. 56 at 8).  Lenox asserts that as a result of the competition from Milwaukee selling its copycat Hole Dozer™ product line, Lenox had to re-evaluate its position in the marketplace to remain competitive with its customer base (*id.*).

In June 2015, Milwaukee filed two *IPR* petitions with the United States Patent and Trademark Office ("USPTO") requesting the USPTO's review of the validity of the Lenox '554 and '555 Patents (Dkt. No. 49 at 5).  *See* 35 U.S.C. § 315(b).  Milwaukee contends that the *IPR* petitions identified numerous prior art references that invalidated nearly all of the Lenox '554 and '555 Patent claims.  On November 30, 2015, the PTAB granted Milwaukee's petitions and formally instituted reviews of 69 of the 71 claims in the '554 and '555 Patents, having

determined that there was a "reasonable likelihood" that Milwaukee would prevail on its challenge to the claims (*id.*).

On December 9, 2015, following the PTAB's grant of review, Defendant filed a motion to stay this case pending the PTAB's ruling in the *IPR* proceeding (Dkt. No. 48).  On the same date, Milwaukee filed a request for a rehearing with the PTAB, asserting that it had mistakenly omitted two claims in the '555 Patent when it issued its prior decision to institute review of 69 of 71 claims.  (Dkt. No. 68 at 1).  Milwaukee maintained that the omission was due to a typographical error in the *IPR* petition (*id.).*  On January 15, 2016, following rehearing, the PTAB agreed with Milwaukee that a typographical error had caused the PTAB to overlook two claims in the '555 Patent.  Accordingly, the PTAB formally included the two omitted claims in the '555 Patent in its decision to institute review (Dkt. No. 68-1 at 3).  This ruling resulted in the decision by the PTAB to institute review of all claims in the '554 and the '555 Patents (*id.*).

III.    DISCUSSION

"Congress recently created the inter partes review process through the America Invents Act of 2001, 35 U.S.C. §§ 311-319."  *Aplix IP Holdings Corp. v. Sony Comput. Entm't, Inc.*, Civ. No. 14-cv-12745-MLW, 2015 WL 5737145, at *1 (D. Mass. Sept. 28, 2015).  "IPR is an expedited procedure for challenging the validity of a patent before the PTO and its Patent Trial and Appeal Board[.]"  *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 355 (D. Mass. 2015).  Under a statutorily mandated schedule, the PTAB generally must reach a decision within one year of the granting of a petition for *IPR*.  *See id* (citing 35 U.S.C. § 316(a)(11)).

"'Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO [examination].'"  *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* No. C 12-05501 SI, 2014 WL 1211640, at *1 (N.D. Cal. Jan. 13,

2014) (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).  "Whether or not to grant a stay is within the Court's discretion."  *ACQIS*, 109 F. Supp. 3d at 356.  Courts consider three factors in deciding whether a case should be stayed while the PTAB is conducting a related *IPR* proceeding:  (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.  An analysis should consider the totality of the circumstances, and, while prior decisions may prove instructive, the inquiry is intended to be case specific.  *See, e.g., id.* For the reasons set forth below, the court concludes that here, two of the factors strongly favor entry of a stay and the third factor, while it may weigh slightly against a stay, does not carry sufficient weight to warrant denial of a stay pending the conclusion of the *IPR* proceeding currently pending before the PTAB.

  1.  The litigation is in its early stages

      The first issue this court should consider in determining whether to grant a stay pending *IPR* is whether discovery is complete and a trial date has been set.  *See, e.g., id.*  "This inquiry is aimed at determining 'whether litigation has progressed significantly enough for a stay to be disfavored.'"  *Id.* (quoting *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014)).  "'The earlier the stage of proceedings, the greater the reason to grant a stay'" *id.* (quoting *SurfCast, Inc. v. Microsoft Corp.*, No. 2:12-CV-333, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014)), because "[s]taying a case that is in an early stage of litigation 'advance[s] judicial efficiency and maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.'"  *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770 (E.D. Pa. 2014) (quoting *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173, 2013 WL

4

144255, at \*5 (D. Del. Jan. 11, 2013)) (alterations in original). In *AQCIS*, the court held that this factor weighed moderately in favor of a stay where document and written discovery were underway, a *Markman* hearing had taken place, and a claim construction opinion had been issued, but no depositions had been taken, expert discovery had not begun, summary judgment motions had not been prepared or filed, and no viable trial date had been set. *See ACQIS*, 109 F. Supp. 3d at 356-57.

By patent litigation standards, the proceedings in the instant case are at a very early stage: discovery has just begun, no *Markman* hearing has been held, no claim construction pleadings have been filed or considered by the court, and no trial date has been set. The case has not progressed past the initial stages such that a stay is not appropriate. Indeed, "[c]ourts have frequently granted motions to stay pending <u>inter partes</u> review at similar or more advanced stages of litigation." *Aplix*, 2015 WL 5737145, at \*2 (citing cases). There is much more work ahead for the parties and this court than behind the parties and this court. *See Air Vent, Inc. v. Owens Corning Corp.*, No. 02:10-cv-01699, 2012 WL 1607145, at \*3 (W.D. Pa. May 8, 2012). Accordingly, this factor weighs strongly in favor of granting a stay in the instant case. *See, e.g., Aplix*, 2015 WL 5737145, at \*2.

2. <u>Staying the case will simplify the issues</u>

The next factor for this court to consider is whether a stay would simplify the issues and the trial of the case. "A stay is favored where the outcome of the IPR 'would be likely to assist the court in determining patent validity and, if the claims were canceled . . . would eliminate the need to try the infringement issue.'" *ACQIS*, 109 F. Supp. 3d at 357 (quoting *SurfCast*, 2014 WL 6388489, at \*2) (omission in original). There is little doubt that a stay would meet both of these goals in this case. The PTAB has granted *IPR* on all of the claims in the two patents-in-

suit. *See Aplix*, 2015 WL 5737145, at *3 (granting stay where PTAB granted *IPR* on all five patents at issue) (citing *ACQIS*, 109 F. Supp. 3d at 357-58 (finding factor favored stay even where only two of the patents-in-suit and three of the claims asserted were under review in the *IPR*)).  Here, the *IPR* ruling will eliminate the need for any trial if all claims are cancelled and, even if most or all of the claims survive IPR, the PTAB's order will facilitate trial by providing the court with the PTAB's expert opinion and likely will clarify the scope of the claims remaining for trial. *See Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575 EMC, 2014 WL 3107447, at *4 (N.D. Cal. July 3, 2014) (citing *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, C-96-2837 DLJ, 1995 U.S. Dist. LEXIS 22517, at *4-5 (N.D. Cal. Jan. 13, 1995)); *see also, e.g., Aplix*, 2015 WL 5737145, at *3; *Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Ams., Inc.*, Civil Action No. H-15-144, 2015 WL 6394436, at *3 (S.D. Tex. Oct. 22, 2015) (" Even assuming that all of the patents-in-suit survive the IPR intact, the PTAB's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court.") (citing *E-Watch, Inc. v. Lorex Can., Inc.*, Civil Action No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013)).  Further, "if all the asserted claims survive inter partes review, the case could still be simplified because the defendant[] would be bound by the estoppel provisions for inter partes review and thus could not raise before this court any arguments that they raised or reasonably could have raised at the PTO." *Verinata*, 2014 WL 121640, at *2.

In opposing Milwaukee's motion for a stay, Lenox did not contest that this factor weighed somewhat in favor of a stay even when the PTAB had not granted *IPR* on all of the claims at issue (Dkt. No. 56 at 13).  With all of the claims in the '554 and '555 Patents under

PTAB review, this factor weighs strongly in favor of a stay.  *See, e.g., Aplix,* 2015 WL 5737145,

at *3.

   3.  <u>Tactical disadvantage and undue prejudice</u>

      The third factor for consideration is whether Lenox, the non-moving party, will be placed

at a tactical disadvantage in this litigation, or be unduly prejudiced in a marketplace in which the

parties are direct competitors.  "Here, nothing suggests that the instant motion, or the inter partes

review itself, is a tactical move to delay trial."  *Conair Corp. v. Tre Milano, LLC*, Civil No. 3:14-

cv-1554(AWT), 2015 WL 4041724, at *4 (D. Conn. July 1, 2015).   Milwaukee filed its petitions

for *IPR* while this case was in its early stages, and the PTAB found the applications sufficiently

meritorious to institute review of all claims in both of the patents-in-suit.  Lenox filed its

complaint in January 2015, but did not serve it until March 2015.  Milwaukee's petitions for *IPR*

were filed in June 2015.  The *IPR* was instituted on November 30, 2015, and Milwaukee

promptly filed its motion for a stay on December 9, 2015 (Dkt. No. 66 at 5).  While Lenox

complains that Milwaukee delayed in producing documents to gain a tactical advantage (Dkt.

No. 56 at 11-12), Milwaukee represents that it has produced a substantial amount of information

to Lenox, including electronically stored information (Dkt. No. 66 at 7), and Lenox chose not to

file a threatened motion to compel (Dkt.No. 56 at 11-12).  Overall, Milwaukee's "actions do not

give rise to the inference that its delay[, if any,] was impermissibly tactical."  *Destination

Maternity*, 12 F. Supp. 3d at 767.

      Lenox's strongest argument against a stay is the potential prejudice to it that may be

caused by continuing competition in the marketplace from an allegedly infringing product.  *See

Security People, Inc. v. Ojmar US, LLC*, Case No. 14-cv-04968-HSG, 2015 WL 3453780, at *5

("At base, the only fact that could potentially weigh against a stay of this action is that

[Milwaukee] and [Lenox] are direct competitors"). "'Courts are more likely to find undue prejudice when the parties are direct competitors.'" *Autoalert, Inc. v. Dominion Dealer Solutions, LLC*, No. SACV 12-1661-JST (JPRx), 2013 WL 8014977, at *2 (C.D. Cal. May 22, 2013) (quoting *Inogen, Inc. v. Inova Labs, Inc.*, No SACV 11-1692-JST (ANx), 2012 WL 4748803, at *4 (C.D. Cal. Mar. 20, 2012)). Milwaukee does not dispute that it competes directly with Lenox, nor could it plausibly do so. "'[W]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill.'" *Destination Maternity*, 12 F. Supp. 3d at 768 (quoting *SenoRx*, 2013 WL 144255, at *7). Nonetheless, "[w]hile a stay always presents a risk of delaying final resolution of a dispute, '[t]he mere potential for delay, however, is insufficient to establish *undue* prejudice.'" *Id.* at 766 (emphasis in original) (quoting *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744, 2013 WL 3353984, at *2 (D. Del. July 2, 2013)) (emphasis in original); *see also Cobalt Boats LLC v. Sea Ray Boats, Inc.*, Civil Action No. 2:15cv21, 2015 WL 7272199, at *3 (E.D. Va. Nov. 16, 2015) ("Delays based on statutory frameworks, such as those pursuant to IPR proceedings, do not normally cause undue prejudice.").

Notwithstanding the parties' status as direct competitors, the evidence before the court does not establish likely losses to Lenox that cannot be addressed by money damages if it succeeds on its claims of infringement. *See Cobalt Boats*, 2015 WL 7272199, at *4; *see also Oticon A/S v. GN Resound A/S*, Case No. 15-cv-2066(PJS/HB), 2015 WL 5752429, at *2 (D. Minn. Aug. 5, 2015) ("While it is undisputed that Plaintiffs and Defendants are head-to-head competitors in a market with relatively few competitors, that is not uncommon in patent litigation. Money damages and, in appropriate cases, a permanent injunction, are ordinarily

adequate to remedy harm caused by infringement, including loss of sales and market share."). There is no evidence before the court showing that Lenox has suffered erosion of its market share following Milwaukee's introduction of the allegedly infringing product (Dkt. No. 66 at 15). At most, according to Lenox, it has had to "re-evaluate [its] premium position in the marketplace to remain competitive with [its] customer base" (Dkt. No. 56-1 at 5, ¶ 11). This vague assertion by Lenox "does not provide this Court sufficient evidence to evaluate the degree of prejudice that [Lenox] may suffer as the result of a stay." *Security People*, 2015 WL 3453780, at *5.

Moreover, while it appears undisputed that Lenox and Milwaukee are the two predominant competitors in the general hole saw market with 31% and 29% market share, respectively, that leaves approximately 40% of the hole saw market to other competitors (Dkt. No. 56 at 7-8). Milwaukee has represented that there are at least four other competitors in the hole saw market that compete for the same business as Lenox and Milwaukee, and Lenox's submissions appear to confirm this representation (Dkt. No. 49 at 15; Dkt. No. 56 at 8). The court does not find persuasive Lenox's attempt to characterize the relevant market as limited to Lenox and Milwaukee (Dkt. No. 56 at 10). The claimed ease of removal of the work piece slugs from the interior of a hole saw is a single feature of this equipment that does not change the basic nature of the equipment or the purpose for which the equipment is used. The presence of other competitors in the market is likely to mitigate the impact of Milwaukee's sales on Lenox's market share. *See Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111-WTL-MJD, 2015 WL 7084079, at *2 (S.D. Ind. Nov. 13, 2015) ("The existence of multiple competitors undermines Plaintiffs' argument that they will lose market share simply due to Defendants' alleged infringement.") (citing *Ignite USA, LLC v. Pac. Mkt. Int'l*, No. 14 C 856, 2014 WL 2505166, at *3 (N.D. Ill. May 29, 2014); *Black & Decker, Inc. v. Positec USA, Inc.*,

No. 13 C 3075, 2013 WL 5718460, at *2 (N.D. Ill. Oct. 1, 2013)); *see also Conair Corp.,* 2015 WL 4041724, at *5; *Destination Maternity*, 12 F. Supp. 3d at 768.

Finally, while it does not appear that Plaintiff has been dilatory in asserting its rights, it waited more than three months from filing its complaint on January 8, 2015, before serving Defendant.  This delay demonstrates some lack of urgency in the prosecution of this case and tends to undermine Lenox's claim of undue prejudice.  *See, e.g., Autoalert*, 2013 WL 8014977, at *3 (delay of three months between filing and service of the complaint contributed to assessment of a demonstrated lack of urgency in prosecution of case).

    4.   <u>Summary</u>

Balancing all three factors, the court finds that issuance of a stay pending the PTAB's final *IPR* decision is appropriate.  The fact that the PTAB found Milwaukee's petition meritorious on all claims weighs strongly in favor of a stay.  Additionally, because the *IPR* proceeding has the potential to reduce or completely resolve the issues for trial, a stay pending the *IPR* ruling will conserve judicial resources and reduce litigation costs in accordance with the purpose for which the *IPR* process was established.  The PTAB will proceed under the expedited schedule established by statute and a stay will not diminish the monetary damages available to Lenox if it ultimately prevails here.  In short, the totality of the circumstances support staying this case pending completion of the PTAB's *IPR* proceeding.  *See, e.g. Knauf Insulation*, 2015 WL 7084079, at *4.

    IV.   <span style="font-variant: small-caps">Conclusion</span>

For all of the reasons stated, Defendant's motion for a stay is GRANTED.  The parties shall file a joint status report within ten (10) days after the conclusion of the PTAB review

informing the court of the PTAB's decision, and, if applicable, requesting that the court lift the

stay.

IT IS SO ORDERED.

April 28, 2016                                         /s/Katherine A. Robertson
                                                      KATHERINE A. ROBERTSON
                                                      UNITED STATES MAGISTRATE JUDGE